COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Clements and Senior Judge Hodges
Argued at Richmond, Virginia


LUTHER BRUCE BUCHANAN

                                        MEMORANDUM OPINION* BY
v.   Record No. 2244-02-2             JUDGE WILLIAM H. HODGES
                                          SEPTEMBER 30, 2003
BONNIE BUCHANAN


              FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
                       Leslie M. Osborn, Judge

              Michael J. Brickhill (Michael J. Brickhill,
              P.C., on brief), for appellant.

              Carol B. Gravitt (E. Sterling Byrd-Roberts;
              Gravitt & Gravitt, P.C., on brief), for
              appellee.


     Luther Bruce Buchanan (husband) contends on appeal that the

trial court erred: (1) in awarding Bonnie Buchanan (wife) a

divorce on the basis of constructive desertion; (2) in failing

to explain the factors upon which it based equitable

distribution of the marital property; (3) in refusing to assign

a present value to wife's Virginia Retirement System (VRS)

pension; (4) in assigning husband only 25% of wife's pension and

awarding her a monetary award of $105,000; (5) in finding as

wife's separate property a contribution of $23,000 from her

inheritance used to improve the marital home; (6) in

conditioning the Qualified Domestic Relations Order (QDRO) on a

--------------------------------------------------

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

specific payment of the monetary award to wife; (7) in ordering interest to accrue on the amount of the monetary award if not timely paid; (8) in reserving wife's right to seek spousal support for a specified period; and (9) in barring husband's transfer, disposition, conveyance or encumbrance of his solely titled property until after entry of the final divorce decree.

Pursuant to Rule 5A:21(b), wife contends that the trial court erred in considering certain debts of husband in the division of property.

After reviewing the record and considering arguments of the parties, we affirm the trial court.

PROCEDURAL HISTORY

Husband filed a bill of complaint on March 9, 2001, seeking a divorce. As grounds, husband alleged cruelty and constructive desertion on the basis of an alleged assault by wife as well as repeated incidences of verbal abuse. He sought equitable distribution of the marital property, spousal support, possession of the marital home, and attorney's fees and costs.

Wife filed an answer and cross-bill. She denied any intentional assault on husband other than in her own attempts to defend herself against his abuse. In her cross-bill, wife requested a divorce a mensa et thoro pursuant to Code § 20-91(6). She sought spousal support, equitable distribution of the marital property, court costs and attorney's fees.

Husband denied wife's allegations and moved to dismiss the cross-bill.

Following extensive evidentiary hearings, the trial court found that wife proved cruelty by husband and ordered the marriage dissolved on that basis. The trial court distributed the marital property in accordance with Code § 20-107.3 as set out in the court's opinion letter dated April 18, 2002, and Attachment A to that letter. The trial court valued the marital property, including debts and liabilities, at $207,962.01.

The trial court ordered husband to pay wife "a lump sum monetary award of One Hundred and Five Thousand Dollars ($105,000) which shall accrue interest at the judgment rate until paid if unpaid beginning June 1, 2002." The trial court allowed husband to pay the award in three installments, with $50,000 due by June 1, 2002, $35,000 by September 1, 2002, and $20,000 by June 1, 2003.

In the final decree, the trial court conditioned entry of the QDRO[1] on husband paying at least $50,000 of the wife's monetary award. The court awarded wife $27,000 in attorney's fees and costs incurred in the divorce proceeding and the fraudulent conveyance action brought against husband. In the decree, the trial court prohibited husband from "transferring, disposing, destroying or encumbering the boat until wife's

---

[1] The trial court and parties refer to the QDRO as an "Approved" Domestic Relations Order. See Code § 20-107.3(K)(4).

monetary award and award of attorney's fees is satisfied except as is necessary to pay to wife the monetary award and attorney's fees directed herein." The trial court reserved wife's right to seek spousal support. Following entry of the final decree, both parties filed written objections to the order on multiple grounds.

## STATEMENT OF FACTS

On appeal, we review the evidence in the light most favorable to the wife, the prevailing party below, and grant all reasonable inferences fairly deducible therefrom. Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999); Gamer v. Gamer 16 Va. App. 335, 340, 429 S.E.2d 618, 622 (1993); McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

Husband and wife married on September 21, 1973. In 1979, the parties built a home in Mecklenburg County on land purchased by husband prior to their marriage. The land is titled solely in husband's name but the parties agree it is marital property. Husband operates his own business, and wife works for the Halifax County Health Department. At the date of filing of the bill of complaint, wife had twenty-five years of service with the health department. During the marriage, wife participated in the operation of husband's business as a general bookkeeper. Husband and wife have one child, who was emancipated at the time the action commenced.

- 4 -

The parties separated on February 1, 2000, following husband's arrest for assault and battery of wife on that same day. Wife testified that husband began choking her during a heated argument. Husband threatened to kill her and forced a gun barrel in her mouth, cracking her tooth. Wife described other incidents of abuse, including one where husband pulled her from a chair with such force that he dislocated her shoulder. In the last two years of the marriage, husband's behavior became increasingly violent toward his wife and son. The record contains deposition testimony of wife and the son taken on December 18, 2001, detailing several instances of husband's abusive behavior.

On December 20, 2001, the trial court received extensive evidence regarding equitable distribution of the marital assets. The parties agreed that the marital home "was built during the course of the marriage with funds that were marital property [and t]here is no question that it's [a] marital asset." The parties agreed that the home would be assigned to the husband but left open wife's claim to separate funds for monies she contributed for an addition to the home.

Each party introduced separate expert valuations of wife's VRS pension. The experts applied interest rates to their calculations derived from different sources and arrived at distinctly different values.

- 5 -

Husband testified that he borrowed $8,000 from Dewey Edwards and $2,000 from Mr. Ellis of Ellis Septic Tank Company. The trial court attributed $2,946.05 in marital debt to wife.

In a separate but related fraudulent conveyance action brought by wife against husband, wife alleged that husband, after separation, borrowed $80,000 against equity in the marital home and used that money to repay certain alleged loans. In that suit, wife challenged a $5,750 payment by husband to his father and a $12,250 payment by husband to his mother. By order dated October 12, 2001, the trial court found that the transfers to husband's parents were fraudulent pursuant to Code § 55-80 and placed the amounts in a constructive trust pending the outcome of the divorce action.[2]

On April 18, 2002, the trial court issued an opinion letter granting wife a divorce. It outlined its findings and the values assigned to the equitable distribution schedule and ordered wife's counsel to prepare a rough draft of the final decree of divorce.

At a May 1, 2002 hearing to determine attorneys' fees, husband objected to the reservation of spousal support included in the draft decree and asked the trial court to explain the factors it used to arrive at its equitable distribution award. The trial court declined to elaborate on or quantify any of the

---

[2] See Buchanan v. Buchanan, ___ Va. ___, ___ S.E.2d ___ (Sept. 12, 2003) (affirming the trial court).

specific factors.  The trial court entered the final decree of divorce on August 6, 2002.

## DISCUSSION

## 1.  GROUNDS FOR DIVORCE

Husband contends the trial court erred in granting wife a divorce on the basis of constructive desertion.  He argues the trial court erred in finding constructive desertion because wife remained in the marital home.

"On appellate review, a divorce decree is presumed correct and will not be overturned if supported by substantial, competent, and credible evidence." Gottlieb v. Gottlieb, 19 Va. App. 77, 83, 448 S.E.2d 666, 670 (1994).  Findings by the trial court are given considerable deference on review, and "we defer to the factual findings of the court . . . where the court took evidence ore tenus." Shackelford v. Shackelford, 39 Va. App. 201, 207, 571 S.E.2d 917, 920 (2002).

"Where dual or multiple grounds for divorce exist, the trial judge can use . . . sound discretion to select the grounds upon which . . . to grant the divorce." Sargent v. Sargent, 20 Va. App. 694, 707, 460 S.E.2d 596, 602 (1995); Lassen v. Lassen, 8 Va. App. 502, 505, 383 S.E.2d 471, 473 (1989).

Code § 20-91(6) authorizes a trial court to grant a divorce "where either party has been guilty of cruelty, caused reasonable apprehension of bodily hurt, or willfully deserted or abandoned the other."  (Emphasis added.)  It is within a trial

court's discretion to determine whether a finding of cruelty "entitles a wife to a divorce on the ground of constructive desertion." Brawand v. Brawand, 1 Va. App. 305, 309, 338 S.E.2d 651, 653 (1986). Desertion as a ground for divorce does not depend on who actually leaves the marital home. Rather, "[i]t means desertion of the marital relationship," and it "may be 'constructive,' for cruelty by one party, which results in the other party's enforced separation." Zinkhan v. Zinkhan, 2 Va. App. 200, 208, 342 S.E.2d 658, 662 (1986).

In the final decree, the trial court found that "cruelty grounds for divorce exist in favor of the Wife against Husband pursuant to Virginia Code § 20-91(6)." Substantial, competent and credible evidence supports such a finding by the trial court.

2. TRIAL COURT'S REFUSAL TO EXPLAIN DETAILS OF AWARD

Marital assets at the time of the equitable distribution hearing included the marital residence, wife's pension, a patent held by husband, two vehicles, a motorcycle, a boat, business equipment, a time share and personal possessions. The court heard evidence from both parties as to the value of personal possessions and entered into evidence numerous exhibits from appraisers. The marital debts included a home equity line and liens on both vehicles and on certain business equipment. Other debts included personal loans to husband.

Code § 20-107.3(E) provides that "the amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts and the method of payment shall be determined by the court after consideration of the following factors." The statute then lists ten factors the trial court must consider. "In fashioning an equitable distribution award, the trial court <u>must</u> consider each of the statutory factors, but may determine what weight to assign to each of them." <u>Barker v. Barker</u>, 27 Va. App. 519, 535, 500 S.E.2d 240, 248 (1998).

"'In reviewing an equitable distribution award on appeal, we recognize that the trial court's job is a difficult one. Accordingly, we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" <u>Shackelford</u>, 39 Va. App. at 210, 571 S.E.2d at 921 (quoting <u>Artis v. Artis</u>, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987)). The court is not required to elaborate upon the exact weight given each piece of evidence and each factor used to reach its decisions. <u>See</u> <u>Pommerenke v. Pommerenke</u>, 7 Va. App. 241, 250-51, 372 S.E.2d 630, 635 (1988) (holding that the analysis in <u>Woolley v. Woolley</u>, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986), as applied to Code § 20-107.1 concerning spousal support is equally applicable to Code § 20-107.3 when addressing the requirement of the trial court to elaborate on the weight given to each statutory

- 9 -

factor).  However, "the court's findings must have some foundation based on the evidence presented."  Woolley, 3 Va. App. at 345, 349 S.E.2d at 426.

An appellate court must be able to determine from the record that the trial court gave substantive consideration to the evidence as it relates to the provisions of Code § 20-107.3. See Gottlieb, 19 Va. App. at 95, 488 S.E.2d at 677.  Here, the trial court identified and valued all the marital assets and it "review[ed] all the pleadings, evidence, exhibits submitted and arguments of counsel, and . . . weighed [them] pursuant to the factors contained in § 20-107.3."  "[A]lthough the court did not state with particularity the degree of consideration it accorded to each of the statutory factors," it indicated it considered all the factors.  Gottlieb, 19 Va. App. at 94, 488 S.E.2d at 676.

Upon review of the evidence, it is clear that the trial court fashioned a fair and equitable distribution of the marital assets after properly considering the evidence and the factors in Code § 20-107.3(E).  We find no error in the trial court's refusal to explain more fully its rationale.

3.  REFUSAL TO ASSIGN PRESENT VALUE TO WIFE'S PENSION; AND
4.  DIVISION OF PENSION IN LIGHT OF MONETARY AWARD

Husband further alleges the trial court erred by failing to assign a present value to wife's pension and awarding husband

- 10 -

25% of that pension.  Husband also claims the award of $105,000 to wife constituted reversible error.

"'Fashioning an equitable distribution award lies within the sound discretion of the trial judge[,] and that award will not be set aside unless it is plainly wrong or without evidence to support it.'"  Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002) (quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)).

In addition, "Virginia law does not establish a presumption of equal distribution of marital assets," and a trial court has discretion to make an equal or disparate division as long as it considered the factors in Code § 20-107.3(E).  Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998); see also Torian, 38 Va. App. at 181, 562 S.E.2d at 362 (division of marital share of husband's VRS pension, as with any other asset, rested within the sound discretion of the chancellor, subject to the limitations of Code § 20-107.3(G) and upon consideration of the Code § 20-107.3(E) factors).

As noted above, the trial court heard extensive evidence ore tenus on January 30, 2002 and received numerous exhibits on the issue of equitable distribution.  The trial court rejected the valuation methods presented by each party's expert and declined to assign the pension a present value.  After considering the factors in Code § 20-107.3(E), the trial court

fashioned an equitable distribution award, part of which included an award to wife of 75% of her pension.

Husband contends the award of $105,000 and 75% of the unvalued pension resulted in wife receiving an inequitable share of the marital estate.

Code § 20-107.3(A) requires the trial court to determine "the ownership and value of all property . . . of the parties" and to "consider which of such property is separate property and which is marital property." Artis, 4 Va. App. at 137, 354 S.E.2d at 814. Once the property is identified and valued, the court is authorized to make a monetary award based on all the factors enumerated in Code § 20-107.3(E). However, in 1988, amendments to the Code eliminated the need to conduct a costly present value inquiry for pension and retirement accounts held by either spouse. Under the present scheme, the court is permitted to grant a separate pension award in addition to the general monetary award required by Code § 20-107.3(A). See Code § 20-107.3(G)(1) (authorizing the court to "direct payment of a percentage of the marital share of any pension . . . whether vested or non-vested, which constitutes marital property and whether payable in a lump sum or over a period of time").

When a trial court orders deferred distribution of the marital share of a pension, determining a present value is not required. See Torian, 38 Va. App. at 177, 562 S.E.2d at 360-61 (under deferred distribution, present value of the pension is

irrelevant). "An award may be a percentage of the marital share of the pension, in which case payment is to be made only as retirement benefits are paid." Gamer, 16 Va. App. at 343, 429 S.E.2d at 624.

This Court recognized that where the evidence makes "a precise determination of a pension's [present] value practically impossible, an award of pension benefits [via the deferred distribution approach] as those benefits are received by the payor spouse . . . may prove the only equitable method of considering the pension benefits in making an award." Johnson v. Johnson, 25 Va. App. 368, 375, 488 S.E.2d 659, 662 (1997).

Moreover, where, as here, a trial court is "not satisfied with the evidence that was presented with regard to the value of [the VRS pension]," it is not required to assign it a present value. Cf. Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (a trial court has discretion to accept or reject expert testimony); Lassen v. Lassen, 8 Va. App. 502, 507, 383 S.E.2d 471, 474 (1989) (although expert testimony is preferred for valuing marital property, the fact finder is not required to accept as conclusive the expert's opinion).

The trial court's decision to divide the marital estate equally and award the wife a greater portion of her pension is supported by the record. Accordingly, the trial court did not abuse its discretion in refusing to assign a present value to the pension or in awarding husband a 25% share.

5. WIFE'S SEPARATE CONTRIBUTION

Husband challenges the trial court's award of $23,000 to wife as her separate property. He contends: (A) the tracing provision of Code § 20-107.3(A)(3) does not apply to separately titled property; and (B) the trial court erred in applying the provisions of Code § 20-107.3(A)(3) because wife contributed the money as a gift.

Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal. Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc). A trial court must be alerted to the precise "issue" to which a party objects. Neal v. Commonwealth, 15 Va. App. 416, 422-23, 425 S.E.2d 521, 525 (1992). "'It is the duty of a party . . . when he objects to evidence to state the grounds of his objections, so that the trial judge may understand the precise question . . . he is called upon to decide.'" Simmons v. Commonwealth, 6 Va. App. 445, 450, 371 S.E.2d 7, 10 (1988) (citation omitted).

Husband listed nine arguments in the "Subject Index" of his brief, however, he only listed eight questions presented in the section referencing where he preserved each issue.

In the "Argument" section, husband claimed the "trial court erred in finding that the wife's contribution of $23,000 from her inheritance to construct an addition to the marital abode was her separate property." Rule 5A:20(c) requires a party's

- 14 -

opening brief to contain a "statement of the questions presented with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each question was preserved in the trial court." By omitting a reference to where he preserved the issue, husband failed to comply with Rule 5A:20.

Prior to entry of the final decree, husband submitted sixteen typewritten objections. In objection Number 2, he alleged, generally, that the trial "[c]ourt erred in finding that [wife] made a separate contribution to the marital residence in the amount of $23,000." Husband's general objection did not alert the trial court to the specific arguments he presents in his brief, viz., that the tracing provisions do not apply to separately titled property and that wife contributed the money as a gift, thereby precluding tracing.

Because husband did not present to the trial court the arguments he now makes on appeal, Rule 5A:18 bars our consideration of these questions for the first time on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

Husband's general objection Number 2 preserved for appeal, however, the question of whether there was sufficient evidence to support the trial court's finding that the $23,000 was wife's separate property.

Code § 20-107.3(A)(3)(d) provides that

> when marital property and separate property
> are commingled by contributing one category
> of property to another, resulting in the
> loss of the contributed property, the
> classification of the contributed property
> shall be transmuted to the category of
> property receiving the contribution.
> However, to the extent the contributed
> property is retraceable by a preponderance
> of the evidence and was not a gift, such
> contributed property shall retain its
> original classification.

The evidence supports the finding of the trial court that funds contributed by wife to the addition to the marital home came from money inherited from her mother's estate. Under Code § 20-107.3(A)(1)(ii), "separate property is all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party." Wife presented evidence of an inheritance received upon her mother's death and both documentary and testimonial evidence of her separate contribution of some of the inherited funds to the addition to the marital home. The trial court's finding is supported by a preponderance of the evidence. Therefore, the trial court did not err in awarding wife $23,000 as her separate property.

6. CONDITIONING ENTRY OF THE QDRO ON PAYMENT OF MONETARY AWARD

Husband argues that the trial court committed reversible error by conditioning entry of the QDRO until he has paid wife a portion of the monetary award. He relies on Morris v. Morris, 3

- 16 -

Va. App. 303, 349 S.E.2d 661 (1986), where this Court held that the trial court had no authority to condition the wife's monetary award on her conveying her interest in the jointly owned home to the husband.

Wife counters that Code § 20-107.3(G) authorizes the trial court to consider factors in subsection (E) when awarding a percentage of the marital share of any pension considered marital property. She contends Code § 20-107.3(E)(10), which allows the trial court to consider other factors deemed "necessary or appropriate . . . to arrive at a fair and equitable monetary award," permits conditioning entry of the award on husband paying part of the monetary award.

The Morris Court held that the trial judge "had the authority to make a monetary award as well as authority to partition the jointly owned property, but he had no authority to condition one on the other." Morris, 3 Va. App. at 310, 349 S.E.2d at 665. There, the trial court ordered the wife "to convey her interest in [the] jointly owned marital home and office building to the husband upon his payment of the $70,000 monetary award." Id. at 310, 349 S.E.2d at 664. We held that the trial court could not order the transfer as part of the monetary award because the value of the marital property needed to be considered as part of the marital award before any partition occurred. Because the value of the monetary award

- 17 -

depended on the amount realized after partition, we reversed. Id. at 310, 349 S.E.2d at 665.

Assuming Morris remains valid in light of numerous statutory changes since that decision, those facts are distinguishable from the facts of this case. The amount of the monetary award in Morris depended on the partition of the jointly owned property. The value of the marital property needed to be considered as part of the marital award and before any partition occurred. Such is not the case here. The trial court did not condition the monetary award on conveying an interest in jointly owned real property in a way that would affect value. Rather, it merely conditioned the entry of the QDRO on the payment of the award.

Moreover, Morris involved the conveyance of real property which has an effect on the property holder's title, whereas here, the trial court divided a pension by giving husband a future interest in that property. But that assignment did not concern title in the property; it was an assignment of rights.

In assigning a future interest in wife's pension to husband, the trial court recognized the need to protect wife from the possibility that husband may obtain 25% of her pension without paying her at least a minimal portion of her marital share. Code § 20-107.3(G) authorizes the trial court to divide and distribute a pension after consideration of the factors in subsection 20-107.3(E). Given the factual circumstances of this

case, including husband's prior attempts to defeat wife's effort to receive her share of the marital assets, we find the court acted within its equitable powers and in its sound discretion in arriving at an equitable award. Accordingly, the trial court did not abuse its discretion in conditioning entry of the QDRO.

### 7. INTEREST AWARD

The trial court "has the power to grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party." Code § 20-107.3(D). "The provisions of § 8.01-382, relating to interest on judgment, shall apply unless the court orders otherwise." Id. Code § 8.01-382 provides that a "judgment or decree of the court may provide for interest on any principal sum awarded and fix the period at which the interest shall commence."

The trial court ordered interest to run on the monetary award beginning thirty days after entry of the final divorce decree. The monetary award of $105,000 "shall accrue interest at the judgment rate until paid if unpaid beginning June 1, 2002," the due date of the first installment payment. A trial court has discretion to award interest and determine when it should begin to accrue.

Husband argues that the trial court cannot order interest to accrue on amounts that have not yet "come due." However, this argument misconstrues the nature of the trial court's judgment. The trial court ordered a lump sum payment of

$105,000 due thirty days from May 1, 2002.  However, it provided husband with an option to pay in installments.  Interest would begin to accrue on June 1, 2002, until fully paid.

The statute allows the trial judge to fix the period at which the interest will commence.  Accordingly, we find no error in the trial court's decision to include interest.

    8.  RESERVATION OF SPOUSAL SUPPORT IN FAVOR OF WIFE

Husband appeals the trial court's reservation of spousal support in favor of wife.  He contends the trial court cannot reserve the right to seek future spousal support after wife indicated at trial she would not seek spousal support.  According to husband, wife waived her right to seek spousal support in the future by explicitly forfeiting spousal support in her statements to the court and in the parties' stipulation that periodic spousal support would not be an issue.  He argues that a waiver of current spousal support contains an implicit waiver of future spousal support.

> "[W]here there is no bar to the right
> of spousal support 'it is reversible error
> for the trial court, upon request of either
> party, to fail to make a reservation in the
> decree of the right to receive spousal
> support in the event of a change of
> circumstances,' even though, at the time of
> the decree, neither party needed support."

Vissicchio v. Vissicchio, 27 Va. App. 240, 254, 498 S.E.2d 425, 432 (1998) (quoting Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990) (quoting Bacon v. Bacon, 3 Va. App. 484, 491,

351 S.E.2d 37, 41 (1986))). Wife initially indicated during a pretrial conference that spousal support was not an issue. However, during a May 1, 2002 hearing at which the terms of the forthcoming decree were discussed, wife asked to reserve spousal support. Husband contended wife waived spousal support in a "pre-trial conference," and once forfeited, she could not then reserve it.

Wife argued that she was now requesting a reservation of spousal support in case husband declared bankruptcy so as to thwart her ability to obtain her equitable distribution award. Husband argued, "I think she [wife] has forfeited the right in this case, even though generally people should probably get that reservation if they simply ask for it, that's the problem in this case. And the statute does say may." The trial court ruled, "Well, at this point, I'm going to reserve a right for five years" with regard to spousal support.

We distinguish Brown v. Brown, 5 Va. App. 238, 361 S.E.2d 364 (1987), upon which husband relies. In Brown, the "decree of divorce specifically left open the issue of spousal support," however, "[a]t the beginning of [a] subsequent proceeding," Mrs. Brown's attorney advised the trial court that wife "was not seeking spousal support." Id. at 245, 361 S.E.2d at 368 (emphasis added). Here, the final decree was not final when wife requested the reservation.

Moreover, in Brown, the trial court made a specific finding of waiver, which finding was affirmed upon appellate review. Id. at 247, 361 S.E.2d at 369. Here, the trial court found no waiver. Based on the circumstances before the trial court and applying a deferential standard of review, we find the trial court did not err in reserving wife's right to spousal support for a period of five years.

Husband also alleges the trial court erred in failing to make written findings or conclusions as required by Code § 20-107.1(F) to justify reserving spousal support. Our review of the record does not show that husband made this argument to the trial court. Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." Accordingly, we are precluded from addressing it on appeal.

9. CONDITIONING DISPOSAL OF HUSBAND'S PROPERTY

Husband contests the trial court's authority to prohibit him from encumbering or disposing of his boat, which is marital property and not jointly titled, for any purpose other than to satisfy the monetary award to wife. Husband relies on Code § 20-107.3(C), which prohibits the trial court from ordering the division or transfer of separate property or marital property which is not jointly owned. Husband contends that if a trial court lacks any authority over such property's division or

transfer, then a _fortiori_, the court could not prohibit the owner from selling it.

Husband posits that wife should take her place with other creditors vying for his solely-titled assets and not receive a preferred claim on his property. She would then have to pursue available enforcement remedies to collect her award.

Wife contends the trial court has the authority to restrict the circumstances under which the husband can sell his boat. She argues Code § 20-107.3(K) grants the trial court "continuing authority . . . to make any additional orders necessary to effectuate and enforce any order entered pursuant to [Code § 20-107.3]."

Courts in Virginia "operate under the long held principle that a court of chancery need not fully exercise its power at one time but may adapt its relief to the circumstances of a particular case." _Morris_, 3 Va. App. at 306, 349 S.E.2d at 663. The facts of this case reveal an attempt by husband to avoid wife's claims to marital assets.[3]

Because the boat is marital property, solely titled to husband, the trial court has no authority to order its division or transfer. Code § 20-107.3(C). However, subsection (C) does not prohibit the trial court from placing restrictions on what

---

[3] _See_ footnote 2, _supra_, and accompanying text.

- 23 -

husband does with any proceeds from a sale occurring before the judgment to wife is satisfied.

The trial court credited the boat to husband in the equitable distribution schedule and it did not order the boat divided or transferred.  By placing the condition on the boat, the trial court acted properly in order to protect wife's marital share of the boat.  The trial court's prohibition merely preserves the asset in the husband so that if he chooses to sell the boat, the asset is available to satisfy the judgment award owed to wife.  Accordingly, the trial court did not err.

BY WIFE'S ASSIGNMENT OF CROSS-ERROR:
ERROR IN CONSIDERING HUSBAND'S DEBTS

Wife claims the trial court erred in considering three debts attributed to husband.  She contends consideration of a $5,750 debt allegedly owed to husband's father is barred by the doctrine of res judicata due to the trial court's earlier decision to void fraudulent transfers to husband's father and mother.  Alternatively, she argues there was insufficient evidence of the existence of certain debts for the trial court to consider them in the equitable distribution.[4]

---

[4] While we find evidence satisfying the contemporaneous objection requirement of Rule 5A:18 to allow this Court to address wife's argument on appeal, we also note that wife failed to properly draft her additional question presented in her brief.  Rule 5A:21(b) requires that any additional questions the appellee wishes to present be done "with a clear and exact reference to the page(s) of the transcript, written statement, record or appendix where each additional question was preserved

In addition, wife contends there was insufficient evidence to prove the $5,750 debt to father, an $8,800 debt owed to Dewey Edwards, and a $2,450 debt owed to Ellis Septic Tank Co.

## Res Judicata

In a fraudulent conveyance action, consideration and intent are at issue and must be proved. Code § 55-80. "Every gift, conveyance, assignment or transfer of . . . any estate, real or personal . . . with the intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall . . . be void." Id. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor. In an equitable distribution proceeding, the court is required to consider all evidence of the parties' debts and assets. Identifying a debt in a divorce proceeding merely requires proof of the existence of that debt. See Code § 20-107.3(C) and (E) (the apportionment of marital debts shall be determined by considering, among other things, the basis for such debts and liabilities).

We find wife's res judicata argument without merit. "Res judicata precludes the re-litigation of a claim or issue once a

---

in the trial court." Wife failed to reference where in the record she preserved the issue.

final determination on the merits has been reached by a court having proper jurisdiction over the matter." Gottlieb, 19 Va. App. at 81, 448 S.E.2d at 669. A person seeking to assert res judicata must establish "(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made." Id.

In the fraudulent conveyance action, wife sought to overturn certain transfers by husband made to defraud wife, whereas in the divorce action, the trial court considered the basis of the debts in an attempt to make an equitable distribution of the marital estate. We agree with the trial court that there "is not identity of the relief sought" between the two actions. Both the remedies and the cause of action are different. The divorce action did not re-litigate the validity of the debt, but merely sought to ascertain the debt's existence. Accordingly, the trial court did not err.

Wife also argues the trial court erred in including husband's debts in its calculation because they were not proved by the evidence and are corrupted by badges of fraud. Wife alleges that husband offered no documentary evidence for the debts. The trial court heard testimony from husband that Edwards loaned him $8,000 in 1998 and that he repaid the loan plus interest on February 13, 2001. Husband offered a check for $8,800 endorsed by Edwards as proof of the loan. Regarding the

loan from Ellis and Ellis Septic Tank, husband testified that he borrowed the money "to pay bills" and that the money "was between him and I."  Husband introduced a promissory note for $2,000, plus interest, signed by husband and dated July 1998, and indicating payment made on February 21, 2001 in the amount of $2,450.  In addition, H.B. Buchanan testified that he loaned his son $5,750 in 1999 to help him pay his bills.

After listening to the testimony and reviewing the evidence, the trial court gave the husband credit for all three loan amounts in the equitable distribution award.  The trial court, sitting as fact finder, believed husband's evidence. "[T]he findings of the trial court based upon the judge's evaluation of the testimony of witnesses heard ore tenus are entitled to great weight."  Gottlieb, 19 Va. App. at 83, 448 S.E.2d at 670.  "We treat the factual determinations of a chancellor based on ore tenus evidence in the same manner as factual determinations made by a jury; we reverse them only if they are plainly wrong or without evidence to support them." Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991) (citations omitted).  The record contained sufficient evidence to support the trial court's finding of the existence of these debts.  Accordingly, the trial court did not err in considering husband's debts.

CONCLUSION

For the reasons set forth above, we affirm the decision of the trial court.

<u>Affirmed.</u>