162

## CIRCUIT COURT OF ORANGE COUNTY

Horton Vineyards, Inc.

v.

Wayne M. Preddy
and E. Vera Preddy

June 20, 2005

Case No. (Chancery) CH03-000150

BY JUDGE DANIEL R. BOUTON

I set forth below the rulings of the court on the disputed issues that have been argued in connection with the pleadings in the above referenced case.

*The Fraud Claim*

The court will first address the argument that the statute of limitations bars the fraud claim. In order to rule on this issue, it is necessary to examine the pleadings that have been filed by the complainants. A comprehensive review of all of the factual allegations demonstrates that Horton is claiming that the respondents made certain representations to the business regarding a permanent lease agreement; that the representations regarding a formal lease were relied upon by Horton; and that, based on such reliance, the complainant invested large sums of money in improving the property of the respondents so that the vineyards could be constructed and rendered fit for commercial operation. In particular, it must be noted that Horton alleges that some of the representations were made and relied upon before the company invested

its money and prior to the construction of any improvements on the property of the Preddys. (Paragraphs 11-15, amended bill of complaint.) The pleadings clearly establish that the dispute about a formal, recordable lease was known to Horton by January of 1999. (Paragraphs 16-20, amended bill of complaint.)

In this context, it must be stressed that the written arguments submitted by Horton include factual assertions that are not found in the pleadings. For example, the company maintains that it "realized no loss and sustained no damages until it was ejected from the property." (Complainant's response memorandum, page 9.) Horton further states that there were ongoing "negotiations" but that the company did not ascertain the "true intentions" of the respondents or discover the "fraud that they had perpetrated on it" until the action for unlawful detainer was filed. (Complainant's response memorandum, page 9.)

The problem with the arguments set forth in the memorandum is that they stand in equipoise to what is actually contained in the pleadings. The latter assert that the alleged fraudulent misrepresentations were premised on a failure by the Preddys to agree to a permanent, written lease arrangement. Horton knew in January of 1999, after it had already invested time and money in making improvements to the property, that no such lease had been signed and that the Preddys had not agreed to the final terms of such a lease. There are no pleaded facts that state or even imply that the unlawful detainer warrant filed by the Preddys resulted in the damages that are claimed. Furthermore, while the written arguments suggest that the alleged damages first accrued when the action for unlawful detainer was filed, the pleadings actually state otherwise.

In light of the above analysis, the court finds that, by January of 1999, at least some alleged damages had accrued to the complainant. Moreover, based on the pleadings, any purported fraud would have been committed and discovered by the complainant, or should have been discovered by the exercise of due diligence, by January of 1999. It is irrelevant that further damages might arguably have been incurred based on the subsequent conduct of the Preddys. As the Supreme Court of Virginia observed in the case of *Caudill v. Wise Rambler*, 210 Va. 11, 14-15, 168 S.E.2d 257 (1969): "Where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date." (Citations omitted.)

Therefore, in the court's view, the applicable two-year statute of limitations began to run in January of 1999, and the fraud claim is barred by the statute of limitations. On this point, the court finds persuasive the arguments found on pages 15-16 of the respondents' initial memorandum and on pages 6-7 of their memorandum in response. Such arguments are incorporated by reference as part of the court's reasoning. Based on the court's ruling on the statute of limitations, it is not necessary to address any of the remaining arguments regarding the fraud claim.

## The Claim for Unjust Enrichment

In order to resolve the remainder of the dispute between the parties regarding the status of the pleadings, the court must first construe the remaining allegations contained in the bill of complaint. Specifically, in addition to the claim of fraud, the court must ascertain what relief is actually being requested by the complainant. Here, it must be noted that the bill of complaint is not divided into specific counts; rather, paragraphs 33-37 come under the heading of "Unjust Enrichment." The remaining allegations contained in paragraphs 38-46 are listed under a section identified as "Uncompensated Use of the Water Distribution System." In the court's view, the allegations set forth under the section on the use of the water system set forth no separate theory of relief that is cognizable under Virginia law. Rather, the allegations contained in this part of the bill of complaint constitute an additional request for compensation from the Preddys based on a theory of unjust enrichment. Therefore, having disposed of the fraud claim, the last issue that the court must address is unjust enrichment.

The court will begin its analysis by addressing the doctrine of *res judicata*. The respondents argue that the application of this doctrine bars the complainant from seeking any relief on the claim of unjust enrichment. *Res judicata* is a judicially created doctrine that rests upon the public policy that favors certainty and finality in the establishment of legal relations. The doctrine is designed to prevent relitigation of the same cause of action. In this context, as stressed by the respondents, it also applies to any part of a cause of action that could have been litigated between the parties and their privies in a prior case. *Bill Greever Corp. v. Tazewell National Bank*, 256 Va. 250, 504 S.E.2d 854 (1998).

The first problem with the argument of the respondents stems from the nature of the remedy that is sought by the complainant. Under Virginia law, imposing a constructive trust to avoid the unjust enrichment of a

litigant is an equitable remedy; it would not be available in the unlawful detainer action that was previously tried by the court. The court is aware of no authority that would have provided for the imposition of a constructive trust in such a case. Such a trust requires an independent action in equity that could not be litigated in a dispute between a landlord and a tenant over the possession of real property where the vineyards are located.

Next, it must also be stressed that the evidence required in an unlawful detainer action is different from the evidence that is needed to establish a constructive trust. This point is crucial because the doctrine of *res judicata* can only be invoked to prevent the claim of unjust enrichment from going forward if the facts that are essential to the two separate causes of action are the same. The Supreme Court of Virginia made this clear in the case of *Cohen v. Power*, 183 Va. 258, 261, 32 S.E.2d 64 (1944), where it stated: "The test generally applied in the application of the doctrine of *res judicata* is to determine whether the facts essential to the maintenance of the two actions are the same. If the same facts or evidence would sustain both actions, then the two actions are considered the same and a judgment in one bars any subsequent action based on the same facts. If different proof is required to sustain the different actions, a judgment in one is no bar to the maintenance of the other." (Citations omitted.) This same principle was cited and followed again in the case of *Bernau v. Nealon*, 219 Va. 1039, 254 S.E.2d 82 (1979). In the present case, evidence on the existence and the terms of any lease between the parties was necessary to resolve the dispute over possession. On the other hand, in order to determine whether the unjust enrichment of the respondents would justify the imposition of a constructive trust, evidence that is completely separate and apart from the lease arrangements between the parties will be needed. Therefore, the doctrine of *res judicata* does not support a dismissal of the claim for unjust enrichment.

Similarly, the court finds that the doctrine of collateral estoppel would not prevent the action for unjust enrichment from being tried. Even if the court rules that the periodic tenancy between the parties was conclusively established as a result of the trial that was conducted in the unlawful detainer case, this would not prohibit the complainant from attempting to establish that a constructive trust should be imposed on the respondents. Such a trust, if deemed appropriate based on admissible evidence, would not be barred because of the existence of a month to month lease between the parties. The primary reason for the court's conclusion on this point is that a constructive trust does not require proof

of any fraud by the respondents; rather, it can be imposed by the court even in cases where the evidence proves legitimate business dealings and demonstrates an absence of misconduct.

The rationale relied on by the court is strongly supported by a number of Virginia cases. For example, in the case of *Jones v. Harrison*, 250 Va. 64, 70, 458 S.E.2d 766 (1995), the court said that constructive trusts "occur not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit." (Citations omitted.) This same rule was followed in the case of *Richardson v. Richardson*, 242 Va. 242, 409 S.E.2d 148 (1991). There, the court explained that constructive trusts arise "independently of the intention of the parties, by construction of law, being fastened upon the conscience of him who has the legal estate in order to prevent in what otherwise would be a fraud." *Id.*, at 245. In *Nedrich v. Jones*, 245 Va. 465, 473, 429 S.E.2d 201 (1993), the court stated that the "remedy of constructive trust has been applied to profits in the hand of a defendant when the court determine that they rightfully belong to another." (Citations omitted.) Finally, in the recent case of *Faulknier v. Shafer*, 264 Va. 210, 215, 563 S.E.2d 755 (2002), the Supreme Court of Virginia observed that courts "of equity may impose constructive trusts whenever necessary to prevent a failure of justice." (Citations omitted.)

The court also finds that the statutory provisions that apply to unlawful detainer actions provide no support for the position taken by the respondents. In this regard, Va. Code § 8.01-130 states that no judgment in an action for unlawful detainer "shall bar any action of trespass or ejectment between the parties, nor shall any such judgment or verdict be conclusive, in any such future action, of the facts therein found." It should first be noted that this section explicitly states that the facts upon which any judgment for unlawful detainer is based shall not be conclusive "in *any* such future action." (Emphasis mine.) Most important, in listing actions that are not barred, the statute only refers to actions of trespass and ejectment; it is silent on the common law doctrines of *res judicata* and collateral estoppel. Thus, the statute has no application to the question of whether those doctrines would bar the request of the complainant that the court consider a constructive trust in this case. That question can only be answered by a traditional analysis of those doctrines based on settled common law principles.

Finally, the respondents argue that the court should sustain their demurrer and dismiss the claim of unjust enrichment because nothing "unjust" has occurred in this case. As a matter of law, they argue that the facts set forth in the pleadings fail to establish any claim for relief. Their reasoning is contained on pages 5-10 of their initial memorandum.

The court does not agree with the analysis of the respondents on this point. The imposition of a constructive trust is an equitable remedy and it is based on the principles discussed in the above sections of this letter ruling. While the pleadings before the court may lack precision, they are sufficient to withstand a challenge by way of a demurrer. Whether sufficient evidence can be produced to establish by clear and convincing evidence that the remedy should be invoked and whether any such evidence would justify all of the relief that is requested are disputed issues that must be resolved at trial.

## Conclusion

The court will dismiss the fraud claim as barred by the statute of limitations. The court will deny the motion of the respondents to dismiss the request for relief on the claim of unjust enrichment because of the doctrine of *res judicata* and the doctrine of collateral estoppel. Finally, the court will overrule the demurrer to the unjust enrichment claim.